UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**United States of America,**

    Plaintiff,

-V-                                                            Case No. 2:2003cv00806
                                                                    JUDGE SMITH
                                                                       Magistrate Judge Kemp

**A 1985 Dodge Ram Custom Van,**

    Defendant.

## OPINION AND ORDER

Plaintiff brings this judicial forfeiture action under 21 U.S.C. § 881(a)(4) and (a)(6), asserting, *inter alia*, that defendant was used to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance. The government moves for summary judgment. For the following reasons the Court grants the government's summary judgment motion.

### I. Facts

The Court accepts the government's version of the facts because its summary judgment motion is unopposed. The facts are summarized as follows:

Defendant is a 1985 Dodge Ram Custom Van, VIN 2B6HB23T7FK268795. Defendant van is titled of record in the name of Longenette. Defendant van is presently valued at about $395.00.

In 1986, Claimant William Longenette ("Longenette"), who resided in Ohio, began dealing cocaine in the West Virginia and Ohio area. Following two controlled purchases of cocaine in August, 1990, agents from a multi-jurisdiction task force obtained arrest and search warrants from a magistrate judge of the Northern District of West Virginia, who was designated as a magistrate judge for the Southern District of Ohio. The warrants were executed in Martin's Ferry, Ohio. A search of Longenette's van (the subject of this action), which had been stopped near Bellaire, Ohio, revealed over $50,000 in cash$_2$, a pistol, ammunition and a small amount of cocaine. Included in the cash seized from his person and the van was buy money used in the controlled purchases from Longenette and a co-conspirator. The search of Longenette's home yielded 80 grams of cocaine, $2000 in cash, five firearms and drug paraphernalia. At the time the van was stopped, Longenette was planning a trip to Florida, where he typically purchased cocaine. The van contained money and a weapon as described by an informant consistent with Longenette's prior trips.

Longenette was indicted in the Northern District of West Virginia. His motion to suppress the evidence seized from the van was denied. Longenette subsequently pleaded guilty to charges of conspiracy to distribute cocaine and income tax evasion, and was sentenced to 168 months imprisonment. A habeas petition, filed pursuant to 28 U.S.C. §2255, based on an ineffective assistance of counsel claim was denied. The Fourth Circuit affirmed the dismissal, and in also ruling on a sentencing question, found that "(t)here was more than ample evidence to support the district court's conclusion that Longenette was a principal in the drug distribution scheme." United States v. Longenette, 28 F.3d 1211, (4$_{th}$ Cir. 1994) (unpublished, copy attached).

In addition, Longenette filed an action in the United States District Court for the Western District of Pennsylvania contesting the administrative forfeiture of his van. The government had initiated forfeiture proceedings in March, 1992. Following a lengthy procedural history, Longenette appealed the district court's grant of summary judgment to the government. The Third Circuit reversed on the ground that the government had not complied with the prison mailbox rule, but held that the forfeiture was voidable, not void. The Third Circuit further held that although the period for filing a judicial forfeiture action had expired, the government should be granted equitable tolling of the five (5) year statute of limitations. In support of this finding, the Court of Appeals noted that the government had acted in good faith, that Longenette's "erroneous framing of the facts ...contributed to the delay", and the record included evidence that the van qualified as property used in facilitating illicit drug transactions. Longenette v. Krusing, et al., 322 F.3d 758 (3rd Cir. 2003). The Court set aside the administrative forfeiture proceeding without prejudice to the government and equitably tolled the statute of limitations, allowing the government to file judicial proceedings within six (6) months from the date of its decision. The instant action was filed within that six (6) month period.

## II. Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. Id. Stated otherwise, the Court must credit evidence favoring the nonmoving party as

---

[1] Reeves involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, Reeves, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. In re Morris, 260 F.3d 654, 665 (6th Cir. 2001). As such, Reeves did not announce a new standard of review for summary judgment motions.

well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. Id.

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex, and Matsushita have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989). The court in Street identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. Id. at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Id. (quoting Liberty Lobby, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. Id. It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" Id. (quoting

5

Matsushita, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Id. at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  In re Morris, 260 F.3d 654, 665 (6th Cir. 2001).

### III.  Discussion

The government's action was brought pursuant to 21 U.S.C. §881(a)(4) and (6) which provide that the following property shall be subject to forfeiture to the United States:

> (4) All conveyances, including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9).
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

This case is governed by the Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106- 185, 114 Stat. 202 (codified at 18 U.S.C. § 983) ("CAFRA").  CAFRA heightens the Government's burden in this case: "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1).

Federal and local agents, using information obtained from multiple informants,

determined that Longenette had been selling cocaine for several years. The information included controlled buys. An informant also indicated that Longenette was leaving for Florida to purchase cocaine. Additionally, as stated by the Court at the sentencing hearing of Longenette:

> ...I do think that there is certainly sufficient evidence of an ongoing conspiracy at the time Mr. Longenette was arrested. And at that time there was a 9 millimeter pistol in the van...Further, there seems to be evidence...that between 1987 and September 1990, that Mr. Longenette traveled from Martin's Ferry, Ohio, to Florida to pick up cocaine, did this on about eight or ten occasions, usually purchased about eight ounces per trip...between 1988 and September 1990, he made five additional trips to Florida and obtained approximately one kilogram each time, that he would carry approximately $50,000 in cash bundles of $1,000 each in small bills, that he also carried a small amount of cocaine for personal use, and at least one firearm. Then as it is pointed out in the prosecutor's version to which I have not received objections, on August the 30th, again, while the law enforcement officers were attempting to apply a search and execute on a search warrant in his residence, they observed him leaving the residence. And then they searched the vehicle, recovered $55,000.65 in cash wrapped up and bound as several informants had described, and then at that time the 9 millimeter pistol was found, along with 1.67 grams of cocaine in a foot powder can with a false bottom. And then at the residence, which was searched thereafter, they recovered 81.64...grams of cocaine, $2,000 in cash, and five guns along with drug paraphernalia. Then...at the time of Mr. Longenette's arrest, almost all of the money that had been paid to...a coconspirator, was found in Mr. Longenette's possession, mixed in with the cash.

(Sentencing Transcript at 15 - 16).

This information mirrored that introduced at Longenette's plea hearing on January 24, 1991. Sergeant Bramble of the West Virginia State Police recited the statement of facts on behalf of the government:

> On this trip to Florida, defendant would have the money used to purchase cocaine broken down and wrapped into $10,000 bundles consisting of ten $1,000 individual packages. They were then wrapped with a rubber band.
> The entire amount was then placed in a large plastic bag and carried in a small suitcase-type bag. He would also take a 9-millimeter semi-automatic pistol and personal use amounts of cocaine.
> On August...28th, 1990, a confidential informant made a controlled purchase of one-eighth ounce of cocaine for $250 from Mr. Longenette in his

Martins Ferry residence. On August 29th, 1990, an informant approached Longenette to make a second controlled purchase of one-eighth of an ounce, Mr. Longenette told the informant to see Jeff Juniewich. The informant then contacted Mr. Juniewich and made a controlled buy of one-eighth ounce of cocaine from him for $230.

On August 30, 1990, search warrants were obtained for Longenette's residence and his person along with an arrest warrant. As Task force agents were preparing to execute the warrants the defendant was observed leaving his residence in his Dodge custom van. Having information that he was planning a trip to Florida, tax (sic) force agents followed the defendant where he was stopped in Belmont County, Ohio Route 147. Upon affecting the arrest and search warrant of his person $1,170 were seized of which 1 $50 bill was identified as one of the bills you used to purchase one-eighth ounce of cocaine from him on August 28th. A search incidental to arrest of the van produced a 9 millimeter semiautomatic pistol. The execution of the search warrant on the Nixon Run residence produced 86.6 grams of 58.7 percent cocaine, which is nearly three ounces, five weapons, $2,000, scales; and various cocaine package paraphernalia was also seized.

On August 31st a search warrant was obtained and executed on the 1985 Dodge custom van that Mr. Longenette was driving at the time of his arrest. $55,060 was seized of which $200 of the buy money used to purchase one-eighth ounce of cocaine from Mr. Longenette on August 28th and $180 of the money used to purchase the one-eighth ounce of cocaine from Mr. Juniewich on August 29th was discovered. The money was packaged in the thousand dollars increments and bundled into $10,000 stacks as mentioned previously. They were all contained in a plastic bag inside a nylon bag.

A second search warrant for the van was obtained and executed resulting with the seizure of approximately a quarter ounce of cocaine. This warrant was obtained after an informant asked us if we found the personal use amounts of cocaine that was contained in the Desenex can.

(Plea Transcript at 76-78).

All of the above confirmed the testimony adduced on November 29, 1990 during a suppression hearing. Sergeant Bramble testified as follows:

> we had information that over the Labor Day weekend that Mr. Longenette was going to be traveling to the State of Florida to obtain cocaine...(w)e had information that Mr. Longenette always carried a firearm when he made his travels
> to Florida, that he had the money packaged a certain way and was usually sitting in
> a bag which was beside the driver seat...the information we had that he kept cocaine in a false bottom foot powder can...he appeared to be going south...the

> informant stated that he would be traveling and that he had just about (sic) the - a conversion van and that he would probably be traveling in that.

(Pretrial Transcript at 17-19 and 29).

The Court finds that the uncontested record establishes by a preponderance of the evidence that the defendant property was used, or intended to be used, to transport or facilitate the transportation, sale, receipt, possession or concealment of illicit drugs. Therefore the government is entitled to summary judgment in its favor as a matter of law.

Although Longenette filed a claim in this case, he has failed to oppose the government's summary judgment motion despite having been afforded a six-month extension of time within which to file a response. The Court deems Longenette to have abandoned his claim.

### IV. Disposition

Based on the above, the Court **GRANTS** the government's unopposed motion to for summary judgment (Doc. 22)

The Clerk shall remove Doc. 22 from the Court's pending CJRA motions list.

The Clerk shall enter a final judgment in forfeiture in favor of the government, forfeiting

the defendant property to plaintiff, United States of America.

      The Clerk shall remove this case from the Court's pending cases list.

        **IT IS SO ORDERED.**

                              **/s/ George C. Smith**
                              **GEORGE C. SMITH, JUDGE**
                              **UNITED STATES DISTRICT COURT**